Cv.#03-2505 RLE

RECEIVED BY MAIL

JUN 2005 

CLERK US DIST COURT
MINNEAPOLIS MN

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 04-2800

---

| | |
|---|---|
| Delroy C. Scheeler, individually and on behalf of Craig A. Scheeler; Rhonda L. Scheeler, individually and as Trustee on behalf of Craig A. Scheeler, | * * * * * * |
| Appellants, | * * |
| v. | * |
| City of St. Cloud, Minnesota; County of Stearns, Minnesota; Dennis O'Keefe, individually and in his former official capacity as Chief of Police for the City of St. Cloud, Minnesota; Larry Meyer, individually and in his former official capacity as Mayor of the City of St. Cloud, Minnesota; David Fredrickson, individually and in his official capacity as Medical Examiner for the County of Stearns, Minnesota; Lee Mayavski, individually and in his official capacity as a Police Officer for the City of St. Cloud, Minnesota and a Deputy Medical Examiner for the County of Stearns, Minnesota; David Johnson, individually and in his official capacity as a Police Officer for the City of St. Cloud, Minnesota; | * Appeal From the United States * District Court for the * District of Minnesota. * * * * * * * * * * * * * * * * * * * * |

SCANNED
JUN 16 2005

| | |
|---|---|
| Gary Leininger, individually and in his official capacity as a Police Officer/Evidence Technician for the City of St. Cloud, Minnesota; David LaBeaux, individually and in his official capacity as a Police Officer for the City of St. Cloud, Minnesota, | * * * * * * * * * |
| Appellees. | * |

Submitted: February 14, 2005
Filed: March 31, 2005

Before MELLOY, HEANEY, and FAGG, Circuit Judges.

HEANEY, Circuit Judge.

Delroy C. and Rhonda L. Scheeler (the Scheelers) brought a claim pursuant to 42 U.S.C. § 1983 against the City of St. Cloud, Stearns County, and various city and county officials (the defendants) after the death of their son, Craig Scheeler. Craig Scheeler died after suffering a gunshot wound to his head. The police investigation concluded that the wound was accidentally self-inflicted when Craig Scheeler was playing Russian Roulette. The Scheelers maintain that someone else shot Craig, and that the defendants' failure to properly investigate the circumstances of Craig's death impeded their ability to bring a wrongful death claim against the assailant, denying them their constitutional right to access the courts. The district court[1] granted summary judgment to the defendants. We affirm.

---

[1] The Honorable Raymond L. Erickson, United States Magistrate Judge for the District of Minnesota, presiding over the matter pursuant to 28 U.S.C. § 636(c).

-2-

## BACKGROUND

On March 24, 1997, nineteen-year-old Craig Scheeler died of a gunshot wound to the head. Leslie Wolf and Aaron Marshall were present at Craig's house at the time of the shooting. Although the factual circumstances surrounding the shooting are in dispute, it is undisputed that Craig was hit with a single bullet, which entered his right temple and exited through the top of his skull. Shortly thereafter, emergency personnel arrived in response to a 911 call from Craig's residence. St. Cloud police officers Mark Moline and David Missell were the first to arrive at the house, and began performing first aid on Craig, who was still alive. When an ambulance arrived, Gold Cross emergency medical technicians tended to Craig, and the officers turned their attention to the scene. Gary Leininger, an evidence technician with the St. Cloud Police Department, also investigated the scene. Among other things, he recovered the gun and fingerprinted it, collected live ammunition rounds, took a blood sample from the floor, found a bullet fragment on the floor, and took photographs of the area.

Sergeant David LaBeaux arrived and tape recorded an interview with Marshall. Lee Mayavski, another St. Cloud officer and also the Stearns County deputy medical examiner, interviewed Wolf, but was unable to record the interview because of an equipment malfunction. Mayavski checked in with the St. Cloud Hospital, which informed him that Craig had died as a result of the gunshot wound. Mayavski then proceeded to the hospital, where he spoke with David Fredrickson, the Stearns County medical examiner. Mayavski performed further observations of Craig's hands and gunshot wounds, and determined that an autopsy was unnecessary. Based on the investigation conducted up to this point, the medical examiner's office and the police concluded that the shooting was accidental.

On June 27, 1997, Mayavski met with the Scheelers. According to his report, the Scheelers "feel that the police investigation is inconsistent [with] their

investigation [and] findings." (Appellant's App. at 115.) The Scheelers believed that Craig may have been the victim of a homicide, and were conducting their own investigation and analysis of the crime scene. The Scheelers had heard "third- or fourth-hand" that Craig was the target of a gang hit. (Id. at 116.) Mayavski and the St. Cloud Police Department followed up on these concerns over the next several years by: sending case files to forensics expert Tom Bevel; requesting that the FBI test the gun; having the Ramsey County medical examiner independently review the case; submitting the matter to the Benton County Attorney's office to determine if any criminal charges were appropriate; and conducting a full series of interviews with Wolf, Marshall, and a number of other friends and associates of Craig's, as well as checking other potential leads. None of this additional investigation yielded results inconsistent with the defendants' initial conclusion that Craig had accidentally shot himself.

In 2000, the Scheelers brought a wrongful death claim in Minnesota state court alleging that Wolf, Marshall, and unknown third persons shot Craig. The matter proceeded to trial on April 21, 2003. On April 30, 2003, the jury returned a verdict in favor of the defendants, finding, by way of a special verdict form, that "Craig A. Scheeler place[d] his handgun to his head and pull[ed] the trigger, causing it to discharge into his head, this being the sole direct cause of his death[.]" (Id. at 26.) The Scheelers appealed. The Minnesota Court of Appeals affirmed, and the Minnesota Supreme Court denied review. See Scheeler v. Wolf, 2004 WL 2094367 (Minn. Ct. App. Sept. 21, 2004).

On July 29, 2003, the Scheelers brought this civil rights claim in district court. The essence of their claim is that the defendants have denied them meaningful access to the courts by failing to properly investigate Craig's death. This, they contend, has "precluded and interfered with [their] exercise of a constitutionally protected right to bring a wrongful death action in Minnesota State District Court against the individual that killed Craig A. Scheeler." (Appellant's App. at 13.) The defendants moved to

-4-

dismiss or for summary judgment. The district court concluded that the defendants were entitled to summary judgment, both on the merits and by way of the doctrine of qualified immunity, because the Scheelers could not show that the defendants failed to perform any aspect of the investigation based on deliberate indifference. The court further held that the municipality claims against St. Cloud and Stearns County additionally failed because municipalities are not "persons" within the meaning of § 1983. The Scheelers appeal.

## ANALYSIS

We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court. Zar v. S.D. Bd. of Examiners, 976 F.2d 459, 464 (8th Cir. 1992). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In order to prevail on a § 1983 claim, the plaintiff must show that the defendant caused the deprivation of a federal right while operating under color of state law. Harrison v. Springdale Water & Sewer Comm'n, 780 F.2d 1422, 1426 (8th Cir. 1986) (holding that a § 1983 inquiry requires consideration of "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981))). The right of access to the courts is well-established. Christopher v. Harbury, 536 U.S. 403, 415 (2002). The right applies not only to the actual denial of access to the courts, but also to situations in which the plaintiff has been denied meaningful access by some impediment put up by the defendant. Alexander v. Macoubrie, 982 F.2d 307, 308 (8th Cir. 1992).

While the right to access the courts exists, the Supreme Court and our court have recognized that the constitutional basis for the right is "unsettled." Harbury, 536 U.S. at 415; Harrison, 780 F.2d at 1427 n.7. In some circumstances, our circuit has held that the right to access derives from the First Amendment. See, e.g., Whisman v. Rinehart, 119 F.3d 1303, 1312-13 (8th Cir. 1997); Harrison, 780 F.2d at 1427. In order to prevail on such a claim, the Scheelers must show that the defendants acted with some intentional motivation to restrict their access to the courts. See Whisman, 119 F.3d at 1313 (stating that right-to-access cause of action requires proof of government action "designed" to prevent access to the courts); Harrison, 780 F.2d at 1428 (holding that plaintiff sufficiently pled a valid right-to-access claim by alleging that city employees retaliated against them for filing a lawsuit).

Reviewing the record in the light most favorable to the Scheelers, we find nothing in it to indicate that the defendants intentionally conspired to keep the Scheelers out of court. Indeed, the Scheelers themselves do not suggest they could clear this hurdle. Instead, they argue that their right-to-access claim ought to be analyzed under the Due Process Clause, and that they could thus prevail by showing that the defendants were deliberately indifferent to their right to access the courts. Cf. County of Sacramento v. Lewis, 523 U.S. 833, 850-51 & n.9 (1998) (noting that an official who has an actual opportunity to deliberate may be liable for a substantive due process violation for undertaking actions that are deliberately indifferent to the constitutional rights of another).

The Supreme Court has noted that the right to access the courts finds support in many parts of the Constitution, including the Due Process Clause. Harbury, 536 U.S. at 415 n.12. The overwhelming majority of cases involving a due process analysis, though, arise in the prison-litigation context, as in situations where a prisoner's access to counsel, mail, or the law library has been curtailed. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 576 (1974) (considering an inmate's access-to-

courts claim under the Due Process Clause). We have found no cases from our circuit that have analyzed a claim like the Scheelers' under the Due Process Clause.

In <u>Wilson v. Lawrence County</u>, 260 F.3d 946 (8th Cir. 2001), the plaintiff alleged that his due process rights were violated by the defendants' failure to investigate potential leads in a homicide case, resulting in his wrongful imprisonment. Our court recognized that "[t]he general test of whether executive action denying a liberty interest is egregious enough to violate due process is whether it shocks the conscience." <u>Id.</u> at 956 (footnote omitted). This determination turns on whether the state actor had the opportunity to deliberate before selecting a course of conduct; if so, the plaintiff may prevail where the actor was deliberately indifferent to a fundamental right held by the plaintiff. <u>Id.</u>; <u>Terrell v. Larson</u>, 396 F.3d 975, 978 n.1 (8th Cir. 2005) (en banc). Thus, we held that the plaintiff in <u>Wilson</u> could go forward on his failure-to-investigate claim brought pursuant to the Due Process Clause if he could show that the actions of the investigating officers "shock[ed] the conscience." <u>Wilson</u>, 260 F.3d at 956.

We find <u>Wilson</u> a useful analogue for analyzing the Scheelers' claim, as both involve the failure to properly investigate a potential crime scene.[2] <u>Wilson</u> involved the denial of the fundamental right to liberty, <u>Wilson</u>, 260 F.3d at 956 n.8, but the Scheelers' right to access the courts is no less fundamental, <u>see, e.g.</u>, U.S. Const. amend. I (recognizing the "right to petition the Government for redress of grievances"). Accordingly, we next consider whether the defendants had the opportunity to deliberate during the investigation, and, if so, whether they acted recklessly with regard to the Scheelers' right to access the courts. <u>Wilson</u>, 260 F.3d

---

[2] Although the Supreme Court has expressed reluctance toward the expansion of substantive due process rights, <u>Lewis</u>, 523 U.S. at 842, we have no such concern here. The Scheelers' claim is essentially that they have been denied "a meaningful opportunity to be heard," a right long recognized under the Due Process clause. <u>See</u> <u>Broddie v. Connecticut</u>, 401 U.S. 371, 377 (1971).

at 956-57. In other words, the Scheelers must show that the defendants displayed a deliberate indifference to their right to access the courts through their investigation of Craig's death.

After carefully reviewing the record, we cannot agree that the defendants' investigation evinces deliberate indifference. The police conducted a thorough investigation at the scene, interviewed potential witnesses, and photographed and preserved most of the evidence. Later, when the Scheelers expressed dissatisfaction with the investigation, the police reopened it, reinterviewed witnesses, reassessed their prior conclusions, and ended up with the same result. Then, when again pressed to come to a different conclusion based on the Scheelers' interpretation of the physical evidence, the police sent the evidence to the Benton County Attorney, the Ramsey County Medical Examiner, and a forensics expert. None of these independent parties came to a different conclusion than the original one proffered by the St. Cloud and Stearns County officials after their initial investigation: Craig Scheeler died by shooting himself.

The Scheelers point to specific facets of the investigation that they claim show the defendants' deliberate indifference, such as the failure to perform an autopsy or test the apparent blood spatters on Craig's hands. They also direct us to a report from the Minnesota Crime Victims Ombudsman, which chastises the police for not immediately treating the scene as a crime scene and violating its own departmental policies. We cannot agree that these allegations establish deliberate indifference. First, there were no outstanding discrepancies to clear up through additional forensics testing; all signs pointed to a gun accident, and each step of the investigation confirmed that. As to the Ombudsman's report, "alleged violations of state laws, state-agency regulations, and even state court orders do not by themselves state a claim under 42 U.S.C. § 1983." Whisman, 119 F.3d at 1312. Certainly, the Ombudsman's report may have confirmed the Scheelers' view that the police could

have handled the investigation more professionally, but it provides no independent basis for a civil rights claim against the defendants.[3]

Lastly, the district court held that even if the individual suits survived, the Scheelers could not make out a case against the municipal defendants because they were not "persons" within the meaning of § 1983. The Scheelers assert that the city and county should be considered "persons" and thus subject to § 1983 liability. They are correct. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978) (characterizing local government as "persons" subject to liability under § 1983). It remains true, however, that "[i]n a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality." Turney v. Waterbury, 375 F.3d 756, 761-62 (8th Cir. 2004) (quoting Yellow Horse v. Pennington County, 255 F.3d 923, 928 (8th Cir. 2002)). The record is devoid of any evidence that the investigatory failures that the Scheelers alleged were the result of a lack of training, or a custom or practice of St. Cloud or Stearns County. Indeed, the Ombudsman's report states that the St. Cloud Police Department "violated its own policy" by neglecting to view Craig's house as a potential crime scene. (Appellant's App. at 332.) We find no error in the district court's dismissal of the municipal defendants.

## CONCLUSION

Eight years ago, Craig Scheeler died from a gunshot wound to his head. All of the investigations conducted by St. Cloud, Stearns County, Benton County, the

---

[3] The district court alternatively dismissed the case on the basis of qualified immunity. In order to overcome the defense of qualified immunity, the Scheelers must first establish that they have "alleged a deprivation of a constitutional right at all." Lewis, 523 U.S. at 841 n.5. As outlined above, they cannot clear this first hurdle: there is nothing to indicate that the defendants either intentionally subverted or were deliberately indifferent to the Scheelers' right to access the courts.

Ramsey County Medical Examiner, the FBI, and an independent forensic analyst, have supported the conclusion that he accidentally killed himself. Nonetheless, the Scheelers claim that the investigation was deliberately indifferent to their right to access the courts. We disagree. None of the alleged deficiencies in the investigation reflect a deliberate indifference on the part of the defendants, and we thus affirm the district court's grant of summary judgment in their favor.

---

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: *Michael E. Gans*

**UNITED STATES COURT OF APPEALS**
FOR THE EIGHTH CIRCUIT
THOMAS F. EAGLETON COURT HOUSE

| | ROOM 24.329 | VOICE (314) 244-2400 |
|---|---|---|
| **MICHAEL E. GANS** | 111 S. 10TH STREET | FAX (314) 244-2780 |
| **Clerk of Court** | ST. LOUIS, MISSOURI 63102 | www.ca8.uscourts.gov |

June 13, 2005

Mr. Richard Sletten
Clerk
U.S. DISTRICT COURT, MINNESOTA
202 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN  55415

RECEIVED BY MAIL
JUN - - 2005
CLERK US DIST COURT
MINNEAPOLIS MN

Re:  04-2800   Delroy C. Scheeler vs. City of St. Cloud

Dear Clerk:

   The mandate of this Court is being sent to the clerk of the district court, together with a receipt.  The clerk of the district court is requested to sign, date, and return the receipt to this office.

   Any district court records in this court's possession will be returned shortly.

(5175-010199)

Sincerely,

*Michael E. Gans*
Michael E. Gans
Clerk of Court

cmd

Enclosure

(LETTER FOR INFORMATIONAL PURPOSES ONLY)
------------------------------------------
cc:  Honorable Raymond Erickson
     Ronald J. Walsh
     Jon Kermit Iverson
     Michael Thomas Milligan
     Heidi N. Thoennes

     District Court/Agency Case Number(s):  CIV 03-2505 RLE

CASE 0:03-cv-02505-RLE-RLE   Doc. 41   Filed 06/16/05   Page 12 of 12